John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Phone: (406) 839-9091
Fax: (406) 839-9092
john@lawmontana.com

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| **STEVEN S. SHUMAN, JR.,** | Cause No. CV-21-18-BU-BMM-JTJ |
| **Plaintiff,** | Judge |
| and | |
| **CONTINENTAL WESTERN INSURANCE COMPANY,** | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **Defendant.** | |

Plaintiff, through counsel, submits his Complaint against Defendants as follows:

1. This is a bad faith action regarding Defendant's violations of statutory and common law claims handling standards.

2. Plaintiff Shuman is and was at all times material hereto a resident of Yellowstone County, Montana.

3. Defendant Continental Western Insurance Company ("Continental") is a foreign insurance company with its principal office in Iowa. Continental is an insurer under MCA § 33-18-242.

4. This Court has jurisdiction over this lawsuit as there is diversity in citizenship and the amount in controversy exceeds $75,000.

5. Venue is proper in this division pursuant to the law and practice of the Montana District. Part of the bad faith as described below is the insurer's conduct in meddling in Plaintiff's business activities and secretly surveilling him and trespassing on his job site in Gallatin County, Montana.

6. On May 4, 2017, Plaintiff was operating a semi-truck on Interstate 90 in Montana when he was rear-ended by a truck negligently operated by an employee of Highmark Traffic Services, Inc. ("Highmark") Highmark's negligence was absolutely clear and not disputed.

7. As a result of Highmark's negligence, Plaintiff was seriously injured and suffered and will suffer damages which a trial jury found to be $2.48 million.

8. Highmark was insured at all relevant times by Continental under a $1 million liability policy and a separate $4 million umbrella policy.

9. Under the Montana UTPA, Continental may not: (1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue, (2) fail to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies, (3) refuse to pay claims without conducting a reasonable investigation, (4) fail to affirm or deny coverage within a reasonable time after proof of loss has been completed, (5) neglect to attempt in good faith to effectuate a prompt, fair, and equitable settlement of claims in which liability has become reasonably clear, and/or (6) fail to promptly settle claims, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

10. Continental appointed Berkley North Pacific Group as its agent with respect to the adjustment of Plaintiff's claim. Continental is responsible for the conduct of Berkley North Pacific Group under agency law.

11. Berkley North Pacific Group, in turn, sought out and retained legal counsel (Halverson, Mahlen & Wright, P.C.) to represent Highmark with respect to Plaintiff's claim. Halverson, Mahlen & Wright, P.C. represents on its website that *"Our Firm takes pride in its longstanding relationships with local, regional, and national insurers. Beyond insurance defense, for many years, we have provided these insurers with the latest in insurance coverage analysis regarding Montana's*

*complex insurance jurisprudence, including Ridley advance payments, and represented these companies in subrogation actions; arson cases; and cases involving compliance with the Montana insurance code*" and specifically references Berkley North Pacific Group and Continental among the insurers with which it has "longstanding relationships." To the extent Continental and/or Berkley North Pacific Group relied on the advice or representations of legal counsel in the adjustment of Plaintiff's claim, then Continental is liable for the conduct and actions of Halverson, Mahlen & Wright, P.C. under agency law.

12. On June 21, 2018, Plaintiff underwent a surgical procedure on his back for injuries sustained in the May 4, 2017 collision. Continental pre-approved the surgery pursuant to *Ridley*. After the surgery, however, Continental reversed course and refused to pay Plaintiff's providers. Continental only paid Plaintiff's providers after he was forced to file a declaratory judgment action against Continental. Continental's conduct was designed to, and did, financially leverage Plaintiff.

13. Continental, despite liability being reasonably clear, failed to attempt to effectuate a prompt or fair settlement of Plaintiff's claims. Continental did not offer any money to resolve Plaintiff's claim until February 6, 2020- 1,008 days after Plaintiff's injury. When Continental did finally make an offer to compromise,

it's offer was less than $46,000 "new money." This offer represented less than 2% of what a Montana jury ultimately determined to be the value of Plaintiff's claim.

14. As of June 3, 2020, Plaintiff's future medical expenses were undisputed by any medical opinions of the defense, supported by his treating neurologist and orthopedic surgeon, and totaled approximately $1,000,000. On June 3, 2020, Plaintiff demanded $1,500,000.00 ("new money") to resolve his claims against Highmark.

15. Continental did not respond to Plaintiff's June 3, 2020 demand for 81 days.

16. On August 24, 2020,- two weeks before trial and knowing Plaintiff was scheduled for a major back surgery within two weeks- Continental offered $400,000 "total money" to resolve Plaintiff's claim. This reflected less than 17% of what a Montana jury determined to be the value of Plaintiff's claim.

17. Continental was obligated under Montana law as set forth in *Watters, Shilhanek* and *High Country Paving* to advance- without a release to its insured- the $1,000,000 liability policy as Plaintiff's claims clearly exceeded that amount. In violation of Montana law, Continental failed to tender its $1,000,000 liability policy. Continental's violation of Montana law in this regard was designed to financially leverage Plaintiff.

18. Plaintiff's providers unequivocally related his surgeries and medical care to the subject motor vehicle accident. Continental disregarded the opinions of medical providers and persisted in disputing causation. Upon information and belief, Continental either failed to seek out a medical provider who would support its causation dispute or sought out medical providers who offered opinions consistent with Plaintiff's treating providers.

19. Continental, rather than attempt to effectuate a prompt or fair settlement of Plaintiff's claim, expended vast sums of money to litigate Plaintiff into submission. In numerous respects, Continental funded and approved the weaponization of the litigation process against Plaintiff. For instance, Continental, through its agents, expended nearly $30,000 to have a private investigator and videographer secretly surveil Plaintiff at his job site in Gallatin County over two weeks. These individuals, retained and paid by Continental, were agents of Continental under agency law. Continental, through its agents, issued overbroad and intrusive financial subpoenas to individuals and entities that Plaintiff worked for. These subpoenas were designed to negatively impact Plaintiff's employment relationships and leverage him into accepting Continental's lowball settlement offers.

20. Continental violated the Montana UTPA and engaged in statutory and common law bad faith by misrepresenting pertinent facts or insurance policy

provisions relating to coverages at issue; failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; refusing to pay claims without conducting a reasonable investigation; failing to affirm or deny coverage within a reasonable time after proof of loss has been completed, neglecting to attempt in good faith to effectuate a prompt, fair, and equitable settlement of claims in which liability has become reasonably clear; and/or failing to promptly settle claims, after liability had become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage

21. Continental's bad faith and/or UTPA violations caused Plaintiff to suffer injury and damages in an amount to be determined at trial.

22. Continental's actions were unlawful, intentional, purposeful and knowingly calculated to enhance its profits at Plaintiff's expense in conscious disregard of the certainty that Plaintiff would suffer injury as a result. Continental's conduct justifies the assessment of punitive damages consistent with Montana law in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests a judgment against Defendant as follows:

1. For bad faith damages in an amount to be proven at trial;

2. For punitive damages to punish Continental and deter it and other insurers;

3. For costs, interest, pre-judgment interest as determined by the Court;

4. For any and all further legal or equitable relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in this matter.

Dated this 8th day of March, 2021.

>  /s/ John Heenan
>  John Heenan
>  Attorneys for Plaintiff